Good morning. Each side is going to have 10 minutes on this case. If you would like to reserve time for rebuttal, please be aware that you are responsible for keeping track of your time, but I do want to know if you'd like to reserve any. Thank you very much. Good morning. May it please the court and counsel. My name is Amy Kraus. I'm appearing on behalf of the appellant, Mark Avery, and I would like to reserve two minutes for rebuttal. This morning, I'd like to start with the standard of review, because regretfully that was not as clear as it should have been in the briefs. And frankly, I was reminded when I saw Judge Smith this morning that when I argued before him about a year and a half ago in that argument, he referred to himself as a standard of review guy. So I think that it's appropriate to start there and beneficial to start there. Whereas here, we are, the issue is appellate counsel's failure to raise an issue on direct appeal, then we are looking at the Strickland standard, deficient performance and prejudice. Deficient performance occurs when the attorney unreasonably failed to discover a non-frivolous claim, and prejudice occurs when that claim would have provided grounds for reversal. So on direct appeal, this court would have reviewed Mr. Avery's claim for plain error, because trial counsel didn't object to the fraud instructions under Shaw. Under the plain error standard of review, the error is clear or obvious. And as to this element, the government conceded in its brief that the error was evident at the time of the appeal. We agree with that. And we also agree with the government that the last two conditions for plain error are satisfied if there is a reasonable probability that the error affected the outcome. So in this way, the two standards intersect. If there is a reasonable probability that the instructional error affected the outcome, then there was plain error at trial and Strickland error on appeal. And the remedy is to remand for a new trial. So to assert... However, to determine substantial rights are affected, you must show that it's more than a mere possibility or uncertainty that your argument would be successful. Correct? I agree with that. So it's got to be more than a mere possibility, more than just simply uncertain, and that's where we are today, right? And then, coupled with that, since it is on review of ineffective assistance of counsel, it's got to be prejudicial. I agree with you, Judge. And I would explain it this way. So under plain error review, there is review for harmlessness, meaning would the error have affected the outcome of the case? And that's where I think there is an overlap. Strickland prejudices, I would even argue, a higher standard because the prejudice prong of the Strickland analysis requires a reasonable probability that the outcome would be different. Well, I understand that, but if we've already affected the standard of review so much to say that it's got to affect substantial rights, and substantial rights are only affected if it's more than a mere possibility, then it seems to me that it would be harder to show prejudice under the Strickland standard. I agree. And of course that makes sense because it wouldn't make sense to make it easier to reverse a conviction on a necessarily Strickland error than a plain error review. So I think we're in the same place, which still requires us to look under Shaw, look at the evidence in light of Shaw, and to ask, would the jury properly instructed, would proper instructions have affected the verdict? Would there have been a reasonable probability of a different outcome? Had the jury been properly instructed? Given the standard of review, and given that the judge who heard all the evidence the first time had to make a decision in this case before it got to me, why am I in a better position than that judge to make this decision? I only read the transcript and listen to good counsel like you, and counsel over there, but that judge was there, heard the evidence, knew how it was presented, knew how it came in, knew why it came in, and that judge says, hey, jury verdict would have been the same if it had been instructed this way it should have been, knowing the evidence. That same judge is the same judge. I was there one day who can take the verdict away from the jury if he doesn't think there's evidence. That same judge is the same judge who can ask for a new trial if he doesn't think there's enough evidence. So why am I reading this transcript, even though I'm listening to good advocates like you, but because I suggest that probably he had good advocates like you in front of that judge, too. Why am I in a better position than he or she to make those determinations? Because this court has de novo review of that court's decision, and that's the responsibility of this court to undertake de novo review, giving due deference to findings of fact, of course. Counsel, can I ask you to talk to me about United States v. Saini? It's one of our Ninth Circuit cases. I want to get to the or versus and in the language. Of course. So how is this different? Because in that case, it's where intent to deceive and cheat are intertwined, such as in a scheme to obtain money by deception. A defendant cannot show that the jury's verdict would have been different with the conjunctive instruction. So talk to me about that. And also Miller, because I think Miller's similar. Yes. So in Shaw and Miller and the case that you cite that I can't pronounce. Is that Saini, I think? How do you pronounce it? S-A-I? Let's go with that. S-A-I. Let's go with Saini. Let's go with that. I called it Saini. Saini. That sounds good to me. Saini. So I don't think they are intertwined in this case, and I'll tell you why. I think there is a superficial or visceral appeal to saying, of course there was deception and cheating because he got this money. But what Shaw tells us is that in order for a defendant to be convicted, to establish fraudulent intent, the government has to show that the defendant used some form of deception with the goal of and for the purpose of depriving the victim of money. And so in this case, if you look at the aviation plan that Mr. Avery proposed, it was an investment plan. So the question is, what was his intent? Did he intend to take that money and divert it for his own use or, as he argued, and I think the evidence amply demonstrates, he was trying to build an aviation company that would be an investment and would be profitable for the trust. He wasn't trying to harm the trust at all. Ms. Krause, I know you're trying to save time, but I don't know how I'm looking at Saini in terms of deception to misappropriate funds. The record is clear in this case that he spent many of the funds on personal mortgages, vehicles, and gifts that would have benefited himself. I mean, enormous amounts of money having nothing to do with a business plan of any sort. And how would you distinguish this case from Saini, which says that the nature of the scheme is such that it implicates both intent to cheat and vice versa, so it makes no difference as to the disjunctive or the conjunctive. I think that argument flies in the face of the evidence in the case. He still owes $46 million to the trust, apparently, and for personal expenses. How does that not involve both intent to deceive and cheat? Well, I think you have to consider the fact that I have a minute, and I'm going to answer your question. I'll go ahead and give you two minutes for rebuttal. Thank you. Go ahead and respond. So, I understand that argument, and that's exactly the argument that the government made at trial. And yet, in fact, they said the clearest evidence of Mr. Avery's intent to deceive or cheat, because that was the instruction at the time, was his personal expenditures. But the jury acquitted him of one wire fraud count and hung on another wire fraud count that had associated money laundering counts that they also hung on that were for those personal expenditures. So the jury did not find that evidence compelling. It found it compelling on other counts. He was convicted on other counts. That is not in perpetuity in terms of how that was woven in the jury verdict. That's true. But I don't think a fair assessment — I don't think that you can discard that hung jury on that count completely when that was the government's — I don't mean to cut you off. I think we have time as a limit. And I'm just trying to focus upon following up on Judge Smith's question. Yes. The evidence is abundantly clear that he paid off two mortgages, a debt on a Chevy Kodiak truck, purchased jet skis, ATVs, snow machines, motorhomes, a moose boat designed for police and military escorts, a skeet steerer loader. I mean, there are all kinds of personal expenditures that are spent here. So how is it not really within the ambit of Saini in terms of the two are interwoven, without question, both intent to deceive and cheat? With respect to some of the personal items that you mentioned, those were related to counts that he was acquitted on. But with respect to other expenditures — But not all. Not all. He was convicted on personal expenditures as well on some of those counts. That's correct. But these were all accomplished by the same — the language of the statute is plan or scheme. I think it's important to remember that the plan or scheme goes back to what Mr. Avery proposed at the very beginning on May 9th, May 11th, and also July 27th, and then how those purchases were spent. The trustees were well aware of money going into accounts of RPS. They directed that they go there. They knew that he was building an air charter business that included medevac and contracts and a pilot training school, and they didn't object. So again, I think what Shaw does is it causes the jury to have to look at the plan that was proposed, what were its goals, how the money was to be used, and what was Mr. Avery's intent. Was it to deprive the trust of money, or was it to build an air charter business that would be profitable for both himself and for the trust? And I don't think that the expenditure of those funds on some personal items obliterates his intent from the outset. But if we really look at Sayini, the thing that I think is hardest for you is that in Sayini, the defendant came up and said, we're totally innocent. We didn't do anything wrong. Nothing was it. And then the court looked at it and looked at everything. And then they said, well, based on your defense, it's hard for you to argue what you're arguing. So then I looked at your defense. Well, your defense was, there's no way. There's no way. I'm totally innocent. I didn't have any deception. Not only I didn't have any deception, I didn't have any cheating. So you used the same defense that Sayini did. And I guess this defense, you're totally innocent. How can there be substantial prejudice then, just like in Sayini, when the state had to prove both instead of just one of them? Because the state, it's a prejudice argument. And if Sayini is really, and I thank my colleague for going there, if that's really the bottom line, then you used the same defense, and I guess we'd have to come out the same way they did. Different evidence, different facts. Well, but it's the defense. It's not about what evidence you had or you didn't have. It's the defense about, your defense was, I'm totally innocent. So it doesn't matter. I didn't cheat. I didn't deceive. I didn't do anything. So what's the prejudice if they had to prove one or two? If your total defense was, I didn't do either. That's what Sayini says. There's no prejudice. May I answer, Your Honor? Yeah. You may. So on the deception side, because we don't know if, the jury was instructed to deceive or cheat. So we don't know what they found as to each counts. We don't know, obviously. So on the deception side, the things that the government argued that were variables, things that changed, that proved the deception, were things that the trustees knew about and either implicitly or expressly approved. So that's how I think the evidence shows there was no deception. And then with the cheating, I take the court back to, what was Mr. Avery's intent? It was to build a profitable air charter business. Maybe he went about it the wrong way, but his intent was not to steal money from the trust. He wanted to make money for the trust. He was paying interest to the trust, and he thought his business would be profitable. And he still presented that in his own testimony. He testified at trial, correct? Yes. And the jury rejected it? Some of it, at least. Yeah, yeah. But they accepted some of it as well. Yeah, I understand. Thank you. Thank you, counsel. I'll give you two minutes for rebuttal. We are the reason you went over time. Good morning. May it please the court, Stephen Corso of the United States. There's no reasonable possibility here that the jury could have convicted the defendant on the basis of deception alone, that is, without the intent to obtain money from the trust or the bank. It's clear beyond a reasonable doubt that the jury verdicts would have been the same, even if the court had properly instructed the jury here. Miller provides the analytical path forward. Miller placed great emphasis on other language in the instructions that were given and concluded that was the most important factor. And that instruction here was that the government had to prove a scheme or plan to defraud or obtain money by means of false or fraudulent pretenses, representations, or promises. Let me ask you a question before we get to all that. Shaw has to do with bank fraud. Yes. Miller has to do with wire fraud. Yes. And with taking both of those, we come up with a problem. But this defendant was convicted of six counts of money laundering. Correct. And one count of making false statements as well. Correct. Which really have nothing to do with the Shaw problem or the Miller problem. So why don't we just impose those sentences and go on? We'd be happy to. I mean, I don't understand why we're really here. We could impose those sentences. The sentences would be done. And frankly, the sentences wouldn't be any shorter. Why are we here arguing about this? We would be happy if the court took that position. However, the money laundering counts are predicated on the wire fraud counts. Okay. That's what I thought. If the wire fraud counts are faulty, then the money laundering counts would be faulty as well. All right. Very good. What about the making false statements? I don't see that as the same problem. We think that count would survive if the court were to find prejudicial error here on the instructions. There was one count of bank fraud and another count of false statements to a bank. Two separate counts, correct?  Yes, sir. And then, of course, there was... On which he was convicted. Correct. And they're both predicated on the same conduct, which is misrepresenting the assets and liabilities in his personal financial statement. What do you make of counsel on the other side's argument that the trustees were also aware of what was happening and either participated in it or allowed it to happen? Does that matter? Should we consider that? I think factually that's very weak. Our position is that the defendant, Mr. Avery, did not inform the trustees, his co-trustees, of all the personal expenditures and at multiple steps along on the way here over a several month period, deceived the trustees, lied to the trustees, and omitted material information. And we believe very strongly that had the trustees been informed by Mr. Avery of all the personal purchases and expenditures, all the extravagance, they would have shut down the scheme immediately. It's important for the court to note that in the aftermath, when all this came to light, the co-trustees removed Mr. Avery as a trustee. They were very angry and devastated at the fact that the trust lost $46 million. I think following up to Judge DeAlba's question, I think the record also reflects that Avery did not provide documentation to his co-trustees in response to an email from co-trustee Matheny, I believe, requesting more information. He never responded. That's right, sir. That was in June of 2005, toward the end of June. And by that time, Mr. Avery had already withdrawn, I think, $35 million of the... I think the request was actually the agreement with Regional Protective Services relating to use of a margin account at RBC and give us more information, and Avery never responded to that. That's right. That's absolutely right. So as the court has alluded to already, the facts and evidence, the cases presented by a scheme to defraud, based on those two things, this court should feel very comfortable that the jury verdict would not have been altered by a different instruction. Doesn't the standard review question really turn such that if it were plain air review, we would know that the state would have the burden of proof, but now we didn't have the objections, so at that point, it would turn the burden of proof to the defendant, right? So the defendant has the burden of proof in this particular case, right? If the court found that plain air review was the standard, we think it's de novo, however. I know, but you think it's de novo only because you're really suggesting that given the two without an objection, somebody can come up with the de novo review, but I'm trying to boil this down to plain science for me. It seems to me that what you're really arguing is that the defense has the standard review here. That's the real reason you've got it going the way you want it in this particular case. I don't know that we agree with that. We're happy to take the burden here. We feel the instruction, as I've alluded to, is strong. And the factual record here is strong. We would prevail on whatever standard review the court applies, the government is confident that we're going to prevail here. Okay. The court's aware of it. I think it's worth mentioning again the extravagant purchases the defendant made, including buying World War II airplanes, a P-51 fighter, a Corsair fighter, a yacht, a moose boat, motor homes, ATVs, and paying personal debts. Again, he did not tell the co-trustees of all these purchases. He also lied to the trustees in other ways. He never formed an escrow account, which he mentioned when making the proposal. The court's aware that he did not provide documents to the co-trustee Methany, and he delayed telling the co-trustees that he had forced out Gilliland, the real expert in the aviation medevac business, delayed telling the co-trustees until the end of July of 2005, and by that time he had withdrawn $43 million in loan funds, which is about 80% of what he withdrew in total. In the aftermath of the scheme, he sold assets out from under the trust. He sold the planes at deep discounts. The Corsair, for instance, was bought for $2.4 million, but he sold it for $1 million. He never gave the trust an opportunity to sell the assets on its own. And then when he raised proceeds from selling some of these assets, he kept the assets and tried to divert them from the trust and prevent the government from seizing them by depositing them with his co-conspirators, so to speak, Mr. Cain's defense attorney's accounts. He lied in his bankruptcy proceedings. He again tried to backdate a $2.6 million promissory note, all in an effort to keep that money from being seized or keep it from going to the trust. Again, he was removed as a trustee, and the trustee, as a direct result of his conduct, lost $46 million. Could I interrupt you a little bit? What do you have to say about the second Sixth Amendment claim, if anything? That's the ineffective claim of— The uncertified trial. Uncertified claim. Your brief said you're not going to address it unless we think it's significant, but I'm now saying it's significant enough for you to tell me what's your argument. We agree with the trial judge's finding that the defense lawyer presented a very stout defense. It was very feisty, and they contested every allegation, most every allegation the government made. Mr. Avery was well represented in this court, so I feel very confident that he received adequate trial counsel and adequate defense, and the jury just did not buy his defense, and for good reason. It's very difficult to justify all these wild purchases and the seizing of all this money at such a rapid rate. There's no doubt that they can't show the prejudice that we would normally have on a Sixth Amendment claim, but they're assuming prejudice based on insulting language and profanity. What do you have to say about that? The relationship wasn't always a happy one, but that doesn't mean that counsel wasn't professional enough to step in in the courtroom and provide a very significant defense and challenge the government at every step. So, counsel, I'm sure you're aware of Frazier, which basically says, look, a severe breakdown in communication, you can almost presume prejudice there. That's essentially, in a nutshell, what they're arguing is they didn't talk anymore. They didn't get along. Mr. Avery couldn't assist in his own representation because he couldn't talk to his attorney. What do you have to say to that? Again, despite the unhappy relationship, he did receive an outstanding defense, and that's what the trial court found, and we agree with that, and we think this court should have every confidence in that. Standard of review on that is a substantial showing of a denial of a constitutional right as to the uncertified claim as a Sixth Amendment representation, correct? Yes. Okay. Thank you, counsel. Thank you. Thank you, Your Honor. And Ms. Krause, we're going to give you the two minutes for rebuttal. Thank you. I appreciate the additional time. With respect to some of the things that Mr. Corso mentioned that happened in the aftermath, I think was the word that he used, of what happened at Security Aviation and including the removal of Avery's trustee, respectfully, when the question is, what were the representations or omissions that were made, and what was Mr. Avery's intent when he made those representations, those things are not very informative about what those representations were. But you've based your argument, to some extent, on the fact that the jury asked for clarification on the knowledge instruction. Yes. And you argue that perhaps that would indicate the jury did not believe he had intent to deceive and cheat, correct? The knowledge instruction, essentially, the original instruction was, according to the record, an act is done knowingly if the defendant is aware of the act and does not act or fail to act through ignorance, mistake, or accident. The government is not required to prove that the defendant knew that his acts or omissions were unlawful. That's a boilerplate instruction. Yes. And the jury came out with a question as to, would you clarify that? What constitutes acting knowingly? And you placed emphasis upon that in your brief, I believe, in terms of your argument. The response given was that the trial judge said, you've asked for a clarification of instruction number 26, which defines knowingly. You should consider this response in conjunction with all the instructions as a whole and not in place of another instruction. And then the court specifically instructed the jury, you may find that the defendant acted knowingly if you find beyond a reasonable doubt that the defendant was aware of a high probability that the money involved in these transactions was illegally obtained as defined in these instructions and deliberately avoided learning the truth. You may not find such knowledge, however, if you find that the defendant actually believed that the money was legitimately obtained or if you find that the defendant was simply careless. That was the response. They heard him testify. And I just don't understand the basis of saying that they would differentiate between intent to deceive and cheat based upon your argument on knowingly that the court came back and instructed further on knowingly. So the reason that I pointed that in the brief was to distinguish in Miller where the court didn't just rely on the wire fraud instruction as providing the deceive and cheat language. They relied on instructions on another conviction. And the court also mentioned, and besides, if the jury had a question, if they weren't clear on what the instruction meant, then they would have asked for clarification. So the reason that I mentioned the jury's question in this case is to highlight that the jury did have a question. Of course, we don't know what instruction it went to. But what Miller says is you have to think about a jury asking for clarification, what could that have meant, and also not relying on that instruction as well. If there was nothing wrong with the wire fraud instruction that was given, Miller wouldn't have had to talk about other instructions on other counts of conviction or talk about potential jury confusion. Counsel, you are well over time. I am. Give me ten seconds. I'll give you your final ten seconds to wrap it up. My final ten seconds is everything that the government has said varied from the original aviation plan that Avery proposed was either approved expressly or implicitly by the trustees, and therefore those variations could not have been essential to the plan. And if the jury had been properly instructed, there is a reasonable probability that the outcome would have been affected, plan error occurred at trial, Strickland error occurred on appeal, and this Court should vacate Mr. Avery's convictions. Okay. Thank you. Thank you. Thank you to both counsel. This matter is now submitted.
judges: SMITH, ALBA, Bennett